# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

KEZIAH PERRY,

     **Plaintiff,**

                                   Case No:

v.

WHOLESOME GOODS, INC.,

     **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Keziah Perry ("Plaintiff"), by and through undersigned counsel, brings this action against Defendant, Wholesome Goods, Inc. ("Defendant"), and in support of her claims states as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages and for declaratory relief, for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et seq*; and the Florida Civil Rights Act of 1992, as amended ("FCRA"), § 760.01, Florida Statutes *et seq.*

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.      Venue is proper in this Court because all or a substantial part of the events or omissions giving rise to these claims herein occurred in this judicial district.

## PARTIES

4.      Plaintiff is a resident of and worked for Defendant in Pinellas County, Florida.

5.      Defendant is authorized to do business in Florida and operates a Florida profit corporation in Clearwater, Pinellas County, Florida.

## GENERAL ALLEGATIONS

6.      Plaintiff has satisfied all conditions precedent, or they have been waived.

7.      Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

8.      Plaintiff requests a jury trial for all issues so triable.

9.      At all times material hereto, Plaintiff was a qualifying "person" and/or "employee" of Defendant under Title VII, the ADA, and the FCRA. 42 U.S.C. § 2000e(a) and (f); 42 U.S.C. § 12111(4); § 760.02(6), Fla. Stat.

10.     At all times material hereto, Defendant employed fifteen (15) or more employees.  Thus, Defendant was an "employer" within the meaning of Title VII, the ADA, and the FCRA.  42 U.S.C. § 2000e(b); 42 U.S.C. §12111(5); § 760.02(7), Fla. Stat.

## FACTS

11.     In or around mid-February 2023, Plaintiff began working for Defendant as a Production Assistant, and she worked in this capacity until her termination in or around April 2023.

12.     Defendant is a retail company that assists other companies with their branding and marketing.

13.     Ironically, Defendant publicly claims on its website: "We're a team of *passionate freethinkers* who know success is more than profits and promotions. We believe in a *healthy balance of work and play*, and see *belly-laughing* with coworkers as a daily must-do. What's more, we work hard every day to *empower the positive* in all we do as a company, *embracing healthy choices* and supporting sustainable causes along the way." (Emphasis added.)

14.     In stark contrast to these public claims of empowerment, positivity, and balance, Plaintiff's three-month experience was marked by discriminatory comments, retaliation, and discipline issued in response to her sex, pregnancy, and accommodation requests. The disparity between Defendant's outward branding and its internal treatment of Plaintiff underscores the pretextual nature of its actions and demonstrates that its purported values were not applied to employees who required the protections of Title VII, the ADA, and the FCRA.

15.     Plaintiff is female and was pregnant during her employment. Plaintiff also experienced physical limitations restricting her major life activities and major

bodily functions. By way of example and not limitation, Plaintiff's conditions limited her ability to lift, climb, bend, and work.

16.     Plaintiff remained able to perform the essential functions of her job with or without reasonable accommodation.

17.     Plaintiff is therefore a member of protected classes based on sex and pregnancy under Title VII and the FCRA and based on disability and/or being regarded as disabled under the ADA and the FCRA.

18.     Plaintiff was qualified for her position and satisfactorily performed her job duties. Plaintiff brought several years of production experience, including work in film, and was well-suited for the cross-functional nature of Defendant's Production Assistant role.

19.     Defendant's own job description for the Production Assistant role confirms the wide variety of tasks expected, including: assisting with set preparation, research for props, administrative tasks such as expense reporting and tracking, painting, errands and catering pickups, steaming, organizing, and assisting with lights and camera. Heavy lifting and ladder climbing occupied a small fraction of total weekly hours and were otherwise, non-essential tasks.

20.     On or around February 16, 2023, Plaintiff informed her supervisor Darla Saycocie ("Saycocie") that she was pregnant and may eventually need accommodations. Saycocie informed Plaintiff to notify her if accommodations became necessary.

21.    Plaintiff also promptly informed Human Resources ("HR") Director Ryan Scott ("Dir. Scott") of her pregnancy. Dir. Scott reviewed Plaintiff's job description with Plaintiff. Plaintiff confirmed she could perform all listed tasks but explained that in the future a lifting restriction might be imposed by her physician and she may need a reasonable accommodation in order to perform that non-essential task. Dir. Scott assured her that her essential tasks would keep her fully employed, thus confirming the non-essential nature of the heavier lifting.

22.    Shortly after Plaintiff's disclosure, Defendant's set stylist Lisa Monello ("Monello"") reacted dismissively by rolling her eyes, asking Plaintiff whether she was married and remarking, "Oh, you're pregnant? . . . You should be scared." Monello was a set stylist who directed and assigned Plaintiff's daily tasks.

23.    On one occasion, Monello instructed Plaintiff to climb an unsecured 10-foot ladder. When Plaintiff asked if someone could hold it or if she could be excused, Monello replied, "It's part of your job. It's not a big deal if you fall off."

24.    On or around March 1, 2023, Plaintiff complained to Dir. Scott and her supervisor regarding Monello's unsafe ladder directive and discriminatory comments.

25.    On or around March 2, 2023, Plaintiff submitted a formal Request for Reasonable Accommodation form requesting to be temporarily excused from using ladders over 3–4 feet.

26.    On or around March 9, 2023, Dir. Scott and management met with Plaintiff regarding her request. Defendant agreed Plaintiff could use a secured staircase-style ladder with guardrails.

27.    After Plaintiff engaged in this protected activity, Monello began to retaliate by assigning impossible deadlines, posting tasks in Asana (a project management system) while simultaneously giving Plaintiff conflicting sticky-note directives, disparaging Plaintiff, and falsely accusing her of poor performance.

28.    Plaintiff completed assignments—including bedding and set preparations—but documented that finished work often sat unused for hours while Monello accused Plaintiff of being late.

29.    On or around March 30, 2023, Defendant issued Plaintiff a First Written Warning for being a few minutes late on one occasion due to an emergency. Dir. Scott later admitted the tardy incident "was not a big deal," but the warning remained in Plaintiff's file. Other non-pregnant and non-disabled employees did not receive Written Warnings for similar infractions.

30.    On or around April 6, 2023, Plaintiff's physician issued a written note restricting her from: lifting more than 25–30 pounds; climbing ladders; bending to pick up items over 25 pounds; performing strenuous activities; and directing that Plaintiff be permitted 15-minute breaks every two hours in addition to her regular lunch break. Alternatively, if accommodations could not be made, Plaintiff's doctor recommended that Plaintiff be reassigned to desk duty "due to concern for the pregnancy."

6

31.    On April 7, 2023, in the latter half of her work day, Plaintiff submitted a written complaint of discrimination based on sex, pregnancy, and disability, as well as retaliation based on requesting accommodations. Plaintiff recounted Monello's comments ("you should be scared," and "it's not a big deal if you fall off") and reported Monello's other discriminatory conduct.

32.    Dir. Scott instructed Plaintiff, the complainant, to remain out of work until April 11, 2023, pending an investigation into Plaintiff's complaints of discrimination and retaliation.

33.    On April 11, 2023, instead of immediately addressing Plaintiff's complaint, Dir. Scott presented Plaintiff with a "Second Warning" *backdated* to April 6. This warning accused Plaintiff of "unsatisfactory performance." Knowing that Plaintiff needed and requested accommodations to perform her job, Defendant specifically stated that the reason for the warning was Plaintiff's "failure to complete Job Responsibilities outlined in Job description." Those responsibilities were vaguely described as: "Handling a variety of tasks between different departments" and "Being quick to jump on any task required of you in that very moment."

34.    Plaintiff initially refused to sign the write up, explaining that she had been trained and instructed to use Asana for internal communications. Defendant wrongly accused Plaintiff of not reacting to a Gmail message - not an internal communication through Asana as she was trained – which was sent after working hours and for which she did not receive a notification until 4:00 a.m. the next day.

7

Nonetheless, Plaintiff began the tasks upon arrival at work. Defendant, however, leveraged Plaintiff's acceptance of the Written Warning against Plaintiff's independent complaint of discrimination. Dir. Scott insisted Plaintiff sign the warning or else Dir. Scott would not proceed with their findings on Plaintiff's independent complaints of discrimination and retaliation.

35.     Due to Defendant's threats, Plaintiff reluctantly signed the write up and informed Dir. Scott that she wanted to discuss her concerns with Alma Wiseman, ("Wiseman"), Defendant's co-founder and chief operating officer.

36.     Defendant's issuance of the so-called Second Written Warning was plainly pretextual. The warning was dated April 6, 2023—the very day Plaintiff submitted her doctor's note restricting certain activities—but it was only presented to Plaintiff on April 11, 2023, **_after_** she complained of discrimination and retaliation.

37.     The backdating and the conditioning of the investigation's findings on Plaintiff's signature all demonstrate that the warning was created not for legitimate reasons, but to fabricate a record of poor performance in retaliation for Plaintiff's protected activity and in response to her need for accommodation

38.     After Plaintiff's forced signature on the April 11 write up, Dir. Scott informed Plaintiff the investigation into her complaints was "closed" because they "couldn't corroborate anything." When Plaintiff stated Monello was lying, Dir. Scott responded, "Maybe she is but I don't have any proof." Defendant then refused to review available surveillance footage which Plaintiff identified by date and time.

8

39.    As part of its investigation, Dir. Scott also claimed it relied on the statements of two male members of the studio team—Matt Dean and David Green. Because these two male, non-pregnant, and non-disabled employees did not feel Plaintiff was discriminated against based on her sex, pregnancy, and disability, Defendant concluded that the conduct must not have occurred. Such investigation is inherently flawed.

40.    On April 11, 2023, Dir. Scott and management told Plaintiff that her restrictions could not be accommodated without imposing "undue hardship." They stated the only options available "were a voluntary unpaid leave of absence" or "termination due to undue hardship." Plaintiff reiterated she could perform the essential functions of her job—including but not limited to research, planning, errands, painting, organization, lighting, and camera assistance—and that only a couple of hours per week that were spent on the non-essential functions of heavy lifting/climbing would need reassignment or other accommodation such as mechanical lifting devices or other equipment. Defendant was familiar with such accommodations as they suggested the secured staircase-style ladder with guardrails.

41.    Defendant refused to engage further in the interactive process. Defendant gave Plaintiff an ultimatum—accept unpaid leave, resign, or face termination.

42.    Defendant did not identify any objective undue hardship or attempt to reallocate the tasks.

43.    Plaintiff informed Defendant she would rather be reasonably accommodated within the workplace but if that was not an option, she would rather go on leave than be terminated.

44.    Still, in or around April 2023, Defendant terminated Plaintiff's employment.

45.    Defendant later issued a Termination Letter dated April 14, 2023, retroactively effective April 13, 2023. The letter expressly cites "Termination – Undue Hardship" as the reason.

46.    Defendant's inconsistent explanations reflect pretext. The reliance on "undue hardship" ties the decision directly to Plaintiff's request for accommodation and her status as a pregnant female, with a disability, or regarded as such.

47.    Defendant treated other employees outside Plaintiff's protected class more favorably. By way of example and not limitation, Defendant allowed Monello to avoid climbing ladders yet denied Plaintiff a comparable accommodation.

48.    Defendant also continued hiring for Plaintiff's role despite Plaintiff being ready and willing to perform the essential functions of her job.

49.    Defendant's conduct—including but not limited to hostile comments, refusal to review evidence, issuance of disciplinary warnings during times of medical need, newly imposed communication requirements without training, and forcing unpaid leave—demonstrates discrimination and retaliation in violation of Title VII, the ADA, and the FCRA.

50. Plaintiff's termination occurred approximately four days after her April 7 written discrimination complaint, establishing temporal proximity between her protected activity and adverse action.

51. Defendant's denial of accommodation, failure to engage in good faith, reliance on pretextual discipline, and termination because of Plaintiff's pregnancy, sex, and disability violated Title VII, the ADA, and the FCRA.

## COUNT I – TITLE VII VIOLATION (PREGNANCY DISCRIMINATION)

52. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

53. Plaintiff is a member of a protected class under Title VII.

54. Plaintiff was subjected to disparate treatment on account of her pregnancy, including her termination.

55. Defendant's actions were willful and done with malice.

56. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to relief.

*WHEREFORE*, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) An injunction restraining continued violation of Title VII by Defendant;

d)    Compensation for lost wages, benefits, and other remuneration;

e)    Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

f)    Any other compensatory damages, including emotional distress, allowable at law;

g)    Punitive damages;

h)    Prejudgment interest on all monetary recovery obtained.

i)    All costs and attorneys' fees incurred in prosecuting these claims; and

j)    For such further relief as this Court deems just and equitable.

## COUNT II – TITLE VII VIOLATION (SEX DISCRIMINATION)

57.    Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

58.    Plaintiff is a member of a protected class under Title VII.

59.    Plaintiff was subjected to disparate treatment on account of her sex, including her termination.

60.    Defendant's actions were willful and done with malice.

61.    Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to relief.

*WHEREFORE*, Plaintiff demands:

a)    A jury trial on all issues so triable;

b)    That process issue and that this Court take jurisdiction over the case;

c)    An injunction restraining continued violation of Title VII by Defendant;

d)    Compensation for lost wages, benefits, and other remuneration;

e)    Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

f)    Any other compensatory damages, including emotional distress, allowable at law;

g)    Punitive damages;

h)    Prejudgment interest on all monetary recovery obtained.

i)    All costs and attorneys' fees incurred in prosecuting these claims; and

j)    For such further relief as this Court deems just and equitable.

## COUNT III – TITLE VII VIOLATION (RETALIATION)

62.    Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

63.    Plaintiff is a member of a protected class under Title VII.

64.    Plaintiff exercised or attempted to exercise her rights under Title VII by objecting to the disparate treatment that she faced and complaining to Defendant.

65.    Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by unfairly disciplining her, attempting to force her on unpaid leave, and ultimately terminating her.

66.    Defendant's actions were willful and done with malice.

67.    Defendant took material adverse action against Plaintiff.

68.    Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

a)    A jury trial on all issues so triable;

b)    That process issue and that this Court take jurisdiction over the case;

c)    That this Court enter a declaratory judgment, stating that Defendant retaliated against Plaintiff for exercising her rights under Title VII;

d)    That this Court enter an injunction restraining continued violation of Title VII by Defendant;

e)    Compensation for lost wages, benefits, and other remuneration;

f)    Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, seniority rights, and all fringe benefits;

g)    Front pay;

h)  Any other compensatory damages, including emotional distress, allowable at law;

i)  Punitive damages;

j)  Prejudgment interest on all monetary recovery obtained.

k)  All costs and attorneys' fees incurred in prosecuting these claims; and

l)  For such further relief as this Court deems just and equitable.

## COUNT IV – FCRA VIOLATION (PREGNANCY DISCRIMINATION)

69.  Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

70.  Plaintiff is a member of a protected class under the FCRA.

71.  Plaintiff was subjected to disparate treatment on account of her pregnancy, including her termination.

72.  Defendant's actions were willful and done with malice.

73.  Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to relief.

*WHEREFORE*, Plaintiff demands:

a)  A jury trial on all issues so triable;

b)  That process issue and this Court take jurisdiction over the case;

c)  Compensation for lost wages, benefits, and other remuneration;

15

d)      Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

e)      Any other compensatory damages, including emotional distress, allowable at law;

f)      Punitive damages;

g)      Prejudgment interest on all monetary recovery obtained.

h)      All costs and attorneys' fees incurred in prosecuting these claims; and

i)      For such further relief as this Court deems just and equitable.

## COUNT V – FCRA VIOLATION (SEX DISCRIMINATION)

74.      Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

75.      Plaintiff is a member of a protected class under the FCRA.

76.      Plaintiff was subjected to disparate treatment on account of her sex, including her termination.

77.      Defendant's actions were willful and done with malice.

78.      Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to relief.

*WHEREFORE*, Plaintiff demands:

a)      A jury trial on all issues so triable;

b)      That process issue and this Court take jurisdiction over the case;

    c)     Compensation for lost wages, benefits, and other remuneration;

    d)     Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

    e)     Any other compensatory damages, including emotional distress, allowable at law;

    f)     Punitive damages;

    g)     Prejudgment interest on all monetary recovery obtained.

    h)     All costs and attorneys' fees incurred in prosecuting these claims; and

    i)     For such further relief as this Court deems just and equitable.

### **COUNT VI – FCRA VIOLATION (RETALIATION)**

79.    Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

80.    Plaintiff is a member of a protected class under the FCRA.

81.    Plaintiff engaged in protected activity under the FCRA by objecting to the disparate treatment that she faced and complaining to Defendant.

82.    Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by unfairly disciplining her, attempting to force her on unpaid leave, and ultimately terminating her.

83.    Defendant's actions were willful and done with malice.

84.    Defendant took material adverse action against Plaintiff.

85.    Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to relief.

**WHEREFORE**, Plaintiff demands:

a)    A jury trial on all issues so triable;

b)    That process issue and that this Court take jurisdiction over the case;

c)    That this Court enter a declaratory judgment, stating that Defendant interfered with Plaintiff's rights under the FCRA;

d)    Compensation for lost wages, benefits, and other remuneration;

e)    Reinstatement of Plaintiff to a position comparable to her prior position, with back pay plus interest, pension rights, and all benefits;

f)    Front pay;

g)    Any other compensatory damages, including emotional distress, allowable at law;

h)    Punitive damages;

i)    Prejudgment interest on all monetary recovery obtained.

j)    All costs and attorneys' fees incurred in prosecuting these claims; and

k)    For such further relief as this Court deems just and equitable.

## COUNT VII – ADA VIOLATION (FAILURE TO ACCOMMODATE)

18

86.    Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

87.    As a qualified individual whom Defendant knew or regarded as disabled, Plaintiff is a member of a protected class under the ADA.

88.    Plaintiff was able to perform the essential functions of her job with or without accommodations.

89.    Defendant failed or refused to engage in an interactive process regarding Plaintiff's accommodations, and subsequently denied Plaintiff reasonable accommodations that would have permitted her to perform the essential functions of her job.

90.    Shortly thereafter, Defendant terminated Plaintiff's employment.

91.    Defendant's actions were willful and done with malice.

92.    Plaintiff was injured due to Defendant's violations of the ADA, for which Plaintiff is entitled to relief.

*WHEREFORE*, Plaintiff demands:

a)    A jury trial on all issues so triable;

b)    That process issues and that this Court take jurisdiction over the case;

c)    An injunction restraining continued violations of the law enumerated herein;

d)     Compensation for lost wages, benefits, and other remuneration;

e)     Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

f)     Compensatory damages, including emotional distress, allowable at law;

g)     Punitive damages;

h)     Prejudgment interest on all monetary recovery obtained;

i)     All costs and attorneys' fees incurred in prosecuting these claims; and

j)     For such further relief as this Court deems just and equitable.

## COUNT VIII – ADA VIOLATION (DISPARATE TREATMENT)

93.     Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

94.     As a qualified individual whom Defendant knew or regarded as disabled, Plaintiff is a member of a protected class under the ADA.

95.     Plaintiff was subjected to disparate treatment by Defendant on the basis of her disability and/or perceived disability.

96.     Defendant's practices and/or policies of failing to accommodate discriminates on the basis of disability.

97.    Defendant intentionally terminated Plaintiff because of her disability, and/or perceived disability, and/or because of the need to provide reasonable accommodation for her disability.

98.    Defendant failed or refused to engage in an interactive process regarding Plaintiff's accommodations and subsequently denied Plaintiff reasonable accommodations that would have permitted her to perform the essential functions of her job.

99.    The effect of the practices complained of has been to deprive Plaintiff of equal employment opportunities and adversely affect her status as an employee because of her disability.

100.    Defendant's actions were willful and done with malice.

101.    Plaintiff was injured due to Defendant's violations of the ADA, for which Plaintiff is entitled to relief.

**WHEREFORE**, Plaintiff demands:

a)    A jury trial on all issues so triable;

b)    That process issue and that this Court take jurisdiction over the case;

c)    That this Court enter an injunction restraining continued violations of the ADA;

d)    Compensation for lost wages, including back pay with interest, benefits, and other remuneration for violation of the Plaintiff's civil rights;

e) Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

f) Reinstatement of Plaintiff's full fringe benefits and seniority rights;

g) Any other compensatory damages, including emotional distress, allowable at law;

h) Punitive damages;

i) Prejudgment interest on all monetary recovery obtained.

j) All costs and attorneys' fees incurred in prosecuting these claims; and

k) For such further relief as this Court deems just and equitable.

## <u>COUNT IX – ADA VIOLATION (RETALIATION)</u>

102. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

103. As a qualified individual whom Defendant knew or regarded as disabled, Plaintiff is a member of a protected class under the ADA.

104. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations.

105. Defendant retaliated against Plaintiff for engaging in protected activity under the ADA by unfairly disciplining her, attempting to force her on unpaid leave, and ultimately terminating her.

106. The adverse employment actions that Defendant took against Plaintiff were material.

107. Defendant's actions were willful and done with malice.

108. Plaintiff was injured due to Defendant's violations of the ADA, for which Plaintiff is entitled to relief.

**WHEREFORE**, Plaintiff demands:

a)  A jury trial on all issues so triable;

b)  That process issue and that this Court take jurisdiction over the case;

c)  That this Court enter a declaratory judgment against Defendant, stating that Defendant interfered with Plaintiff's rights under the ADA;

d)  That this Court enter an injunction restraining continued violations of the ADA;

e)  Compensation for lost wages, including back pay with interest, benefits, and other remuneration for violation of the Plaintiff's civil rights;

f)  Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

g)  Reinstatement of Plaintiff's full fringe benefits and seniority rights;

h) Any other compensatory damages, including emotional distress, allowable at law;

i) Punitive damages;

j) Prejudgment interest on all monetary recovery obtained.

k) All costs and attorneys' fees incurred in prosecuting these claims; and

l) For such further relief as this Court deems just and equitable.

## COUNT X – FCRA VIOLATION (FAILURE TO ACCOMMODATE)

109. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

110. As a qualified individual whom Defendant knew or regarded as disabled/handicap, Plaintiff is a member of a protected class under the FCRA.

111. Plaintiff was able to perform the essential functions of her job with or without accommodations.

112. Defendant failed or refused to engage in an interactive process regarding Plaintiff's accommodations, and subsequently denied Plaintiff a reasonable accommodation that would have permitted her to perform the essential functions of her job with Defendant.

113. Shortly thereafter, Defendant terminated Plaintiff's employment.

114. Defendant's actions were willful and done with malice.

115. Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to relief.

**WHEREFORE** Plaintiff demands:

a)   A jury trial on all issues so triable;

b)   That process issues and that this Court take jurisdiction over the case;

c)   An injunction restraining continued violations of law enumerated herein;

d)   Compensation for lost wages, benefits, and other remuneration;

e)   Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

f)   Compensatory damages, including emotional distress, allowable at law;

g)   Punitive damages;

h)   Prejudgment interest on all monetary recovery obtained;

i)   All costs and attorneys' fees incurred in prosecuting these claims; and

j)   For such further relief as this Court deems just and equitable.

## <u>COUNT XI – FCRA VIOLATION (DISPARATE TREATMENT)</u>

116.   Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

117.   As a qualified individual whom Defendant knew or regarded as disabled/handicap, Plaintiff is a member of a protected class under the FCRA.

118.    Plaintiff was subjected to disparate treatment by Defendant on the basis of her disability/handicap, and/or perceived disability/handicap.

119.    Defendant's practices and/or policies of failing to accommodate discriminates on the basis of disability/handicap.

120.    Defendant intentionally terminated Plaintiff because of her disability/handicap, and/or perceived disability/handicap, and/or because of the need to provide reasonable accommodation for her disability/handicap.

121.    Defendant failed or refused to engage in an interactive process regarding Plaintiff's accommodations, and subsequently denied Plaintiff a reasonable accommodation that would have permitted her to perform the essential functions of her job with Defendant.

122.    The effect of the practices complained of has been to deprive Plaintiff of equal employment opportunities and adversely affect her status as an employee because of her disability/handicap.

123.    Defendant's actions were willful and done with malice.

124.    Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to relief.

**WHEREFORE**, Plaintiff demands:

    a)    A jury trial on all issues so triable;

    b)    That process issue and that this Court take jurisdiction over the case;

c)    That this Court enter an injunction restraining continued violations of the FCRA;

d)    Compensation for lost wages, including back pay with interest, benefits, and other remuneration for violation of the Plaintiff's civil rights;

e)    Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

f)    Reinstatement of Plaintiff's full fringe benefits and seniority rights;

g)    Any other compensatory damages, including emotional distress, allowable at law;

h)    Punitive damages;

i)    Prejudgment interest on all monetary recovery obtained.

j)    All costs and attorneys' fees incurred in prosecuting these claims; and

k)    For such further relief as this Court deems just and equitable.

## <u>COUNT XII – FCRA VIOLATION (RETALIATION)</u>

125.    Plaintiff realleges and readopts the allegations of Paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

126.    As a qualified individual whom Defendant knew or regarded as disabled/handicap, Plaintiff is a member of a protected class under the FCRA.

127.    Plaintiff engaged in protected activity under the FCRA by requesting reasonable accommodations.

128.    Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by unfairly disciplining her, attempting to force her on unpaid leave, and ultimately terminating her.

129.    The adverse employment actions that Defendant took against Plaintiff were material.

130.    Defendant's actions were willful and done with malice.

131.    Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to relief.

*WHEREFORE*, Plaintiff demands:

a)    A jury trial on all issues so triable;

b)    That process issue and that this Court take jurisdiction over the case;

c)    That this Court enter a declaratory judgment against Defendant, stating that Defendant interfered with Plaintiff's rights under the FCRA;

d)    That this Court enter an injunction restraining continued violations of the FCRA;

e)    Compensation for lost wages, including back pay with interest, benefits, and other remuneration for violation of the Plaintiff's civil rights;

f)      Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

g)      Reinstatement of Plaintiff's full fringe benefits and seniority rights;

h)      Any other compensatory damages, including emotional distress, allowable at law;

i)      Punitive damages;

j)      Prejudgment interest on all monetary recovery obtained.

k)      All costs and attorneys' fees incurred in prosecuting these claims; and

l)      For such further relief as this Court deems just and equitable.

### <u>JURY TRIAL DEMAND</u>

Plaintiff demands trial by jury as to all issues so triable.

Dated this 19th day of September, 2025.

Respectfully submitted,

_s/ Amanda Heystek_

**AMANDA HEYSTEK**
Florida Bar No: 0285020
**NIKOLE MILLER**
Florida Bar No: 1031826
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main: (813) 224-0431
Direct: (813) 379-2560
Facsimile: (813) 229-8712
Email: aheystek@wfclaw.com
Email: nmiller@wfclaw.com
Email: rcooke@wfclaw.com
**Attorneys for Plaintiff**